IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMY CASTILLO,

        Plaintiff,

vs.                                    CIVIL NO. 01-626 LFG/WWD

CITY OF ALBUQUERQUE et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION FOR BIFURCATION

THIS MATTER is before the Court on Defendants' April 12, 2002 Motion for Separate Trials [Doc. 53]. Plaintiff, Jimmy Castillo ("Castillo"), opposes the motion. The Court considered the motion, response and reply, and determines that oral argument is not necessary. This matter may be resolved on the parties' submissions.

Castillo filed a 42 U.S.C. § 1983 excessive force claim against Officers Andrew Lehocky and Michael Schaller arising out of an incident occurring on April 10, 2000. Castillo alleged that Officer Lehocky's use of a police service dog and Officer Schaller's use of a non-lethal, air tazer in Castillo's arrest constituted excessive use of force. Castillo's second claim against the City of Albuquerque is based on a supervisory liability theory, including the City's failure to train and supervise its officers.

Defendants seek to bifurcate Castillo's claims against the individual officers from his claims against the City, arguing that the claims are different, they require different legal standards and, more importantly, there is a danger of unfair prejudice because evidence that may be relevant to the supervisory liability claims would be inadmissible on the excessive force claims.

Requests to bifurcate claims of this nature are common. *See*, for example, Chief Judge James Parker's analysis in Smith v. Stover, CIV 95-1471 (D.N.M. Nov. 6, 1997)[Doc. 126]. So, too, in Baum v. Orosco, 106 N.M. 265, 742 P.2d 1 (Ct. App. 1987), the trial court was faced with the identical situation. Claims were brought against a police officer for excessive use of force and against the City of Hobbs and its police chief for inadequate training and supervision. The trial court reasoned the inadequate training and supervision claims were secondary to and dependent upon plaintiff's successful prosecution of the claims against the individual officer. Indeed, a successful defense to the individual claims would obviate altogether the need for a separate trial on the derivative claims.

The court ordered bifurcation. The excessive force claims against the officer proceeded to trial. The jury returned a verdict in favor of the police officer. As a result, the trial court declined to allow the supervisory liability claim to proceed to trial. An appeal followed, and plaintiff/ appellant argued it was error to bifurcate the claims. The New Mexico Court of Appeals disagreed and affirmed the trial court. The appellate court stated:

> A trial judge may order bifurcation of trial, or separate trials of any claim or separate issue, when separate trials would be conducive to expediting the cause and is in furtherance of fairness and judicial economy.

Id. at 268, 742 P.2d at 4.

The standards enunciated in Baum v. Orosco are consistent with federal law. Angelo v. Armstrong World Industries, Inc., 11 F.3d 957 (10th Cir. 1993). Fed. R. Civ. P. 42(b) states, in part:

> (b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or issue . . . .

2

Thus, if a court finds that any of these purposes are served, it may order a separate trial.

In reference to the trial court's decision to bifurcate claims, the appellate court in Baum v. Orosco stated:

> In general, we look with favor on bifurcation in situations such as this. The procedure simplifies the trial of the primary claim in that the evidence relevant only to the derivative claim is properly excluded in the first trial. Moreover, as here, the jury's determination on the primary claim may eliminate the need for a trial on the secondary claims. Thus, the procedure is less confusing to the jury and promotes judicial economy.

Id. at 268-69, 742 P.2d at 4-5.

The same is true here. Bifurcation will promote convenience by simplifying the issues. Evidence that may be relevant and admissible on the supervisory liability claim has no bearing on whether Officers Lehocky and Schaller's use of force against Castillo was unreasonable in light of the surrounding facts and circumstances. Graham v. Connor, 490 U.S. 397, 109 S. Ct. 1865 (1989); Allen v. Muskogee, Okl., 119 F.3d 840 (10th Cir. 1997), *cert. denied*, 522 U.S. 1148, 118 S. Ct. 1165 (1998). Bifurcating Castillo's principal claims from the derivative supervisory claims would allow the Court to limit evidence in the first proceeding only to the facts relevant to the prosecution and defense of Castillo's claims of constitutional violation, negligence and damages arising from those acts. Those issues and the evidence relevant to the Fourth Amendment claim and negligence are relatively straight-forward and the proofs simplified. Fewer witnesses are necessary. This process significantly reduces the costs of the proceeding, and, thus, is in keeping with the cost-savings provisions of the Civil Justice Reform Act, 28 U.S.C. § 471 *et seq.*

The municipal liability claims are significantly more difficult, time consuming and expensive to present and defend. In reference to the charges relating to municipal liability, Castillo will seek to introduce evidence of multiple other incidents of alleged police misconduct involving Officer Lehocky and his police service dog "Bart." Those other incidents are unrelated to Castillo's underlying claim against the officers, and each has its own set of applicable facts and circumstances. Each may be a trial within a trial. Thus, it is easy to see that the prosecution and defense of these claims will be more complex. For example, evidence of a "number of prior incidents of police [misconduct], the nature of such incidents, and the municipal policy maker's reaction to them," Marryshow v. Town of Bladensburg, 139 F.R.D. 318, 320 (D. Md. 1991), are generally presented. None of that information is relevant to Castillo's underlying primary complaint of excessive force, constitutional violation and negligence allegedly committed by Officers Lehocky and Schaller. Indeed, if evidence of other bad acts, crimes or wrongs were admitted during a joint trial, it could result in unfair prejudice. If a fact finder hears evidence that, at other times, other officers violated rights of citizens, the fact finder may impermissibly conclude that such evidence supports a finding that Officers Lehocky and Schaller, on this occasion, violated Castillo's civil rights. This is an impermissible inference and has been soundly rejected by legal scholars. *See, e.g.*, J. Wentworth, Treatises on New Mexico Rules of Evidence, § 44-1 (1987)(commenting on identical provisions in New Mexico's Rules of Evidence dealing with other bad acts, crimes or wrongs).

In addition, bifurcation of Castillo's claims would reduce the chance of jury confusion. If all the evidence relevant to both claims is presented in one trial, the Court would have to instruct the jury not to consider certain evidence for certain purposes. While instructions to disregard evidence are frequently given, it is unknown whether jurors actually disregard evidence when so instructed. Thus,

it is far better to avoid the problem if possible.

As previously noted, bifurcation in this case is in accord with the cost-savings provisions of the Civil Justice Reform Act. This is especially true if the fact finder determines there was no underlying liability on the principal claims. In that event, a second trial on the derivative claims may be eliminated altogether.

In Smith v. Stover, CIV 95-1471 (D.N.M. Nov. 6, 1997)[Doc. 126], Chief Judge James A. Parker relied on this rationale in ordering bifurcation of supervisory liability claims from the plaintiff's primary excessive force claim. Judge Parker noted that bifurcation was consistent with the standards enunciated in Rule 42(b). I agree.

The Court finds good cause for granting Defendants' motion and orders that Castillo's claims against Officers Lehocky and Schaller be bifurcated from the municipal liability claims. The Court has not restricted discovery, so at the time of Castillo's initial trial on the principal claims, all discovery will have been completed, including discovery on supervisory liability. Thus, if Castillo is successful in his claims against the individual officers, the supervisory liability claims will be tried to the same jury shortly after the first trial. Alternatively, if Castillo is unsuccessful in his prosecution of claims against the individual officers, there is no need for a second trial.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge