IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JIMMY CASTILLO,

               Plaintiff,
vs.                                                  CIVIL NO.   01-626 LFG/WWD

CITY OF ALBUQUERQUE et al.,

               Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON MUNICIPAL LIABILITY AND SUPERVISORY LIABILITY CLAIMS

THIS MATTER is before the Court on Defendants' Motion for Partial Summary Judgment No. I: Dismissal of Municipal Liability (Policies, Customs, Patterns, and Practices) Claims [Doc. 58], and Defendants' Motion for Partial Summary Judgment No. III: Dismissal of Supervisory Liability Claims [Doc. 68]. After careful consideration of the law and the parties' submissions, including supporting memoranda, Plaintiff's responses in opposition and reply briefs, the Court concludes that both motions should be granted. Oral argument is not necessary.

### Background

Plaintiff Jimmy Castillo ("Castillo") asserts claims, under 42 U.S.C. § 1983, against the City of Albuquerque ("City"), Officer Andrew Lehocky ("Lehocky") and Officer Michael Schaller ("Schaller"), arising out of an incident that occurred on April 10, 2000. Castillo specifically alleges that he was viciously attacked by "Bart," a police service dog ("PSD") handled by Officer Lehocky, after police were called out in response to a call from Castillo's wife informing them that Castillo had threatened to harm himself. Castillo claims that Officer Lehocky "sicced" Bart on Castillo in effecting

Castillo's arrest and that Bart caused him serious physical injury. Following the dog attack, Officer Schaller "discharged at point blank range his taser weapon directly into the chest area of plaintiff." (Plaintiff's Contention, IPTR, pp. 1, 2, Doc. 23). Castillo argues that the officers' actions constituted the use of excessive force in violation of his constitutionally protected rights. In addition to the claims against the officers, Castillo asserts that the City is vicariously liable for the alleged misconduct committed by its employees. [Complaint at ¶ 3, Doc. 1.]

Defendants filed separate motions for partial summary judgment as to the municipal liability and supervisory liability claims, both of which are addressed below. The Court notes, however, that neither the Complaint, nor Plaintiff's contentions in the IPTR, expressly identify a claim of supervisory liability. For example, none of the allegations in the Complaint specifically allege that a supervisor of the officers participated in the conduct that caused the constitutional deprivation, and there are no general allegations in the Complaint regarding supervision and training. Moreover, no individual supervisor of Officers Lehocky and Schaller is named as a defendant in this litigation. To the extent that Plaintiff intended to assert a separate claim of supervisory liability claim against the City, in addition to the municipal liability claim, the analysis is similar with respect to both claims and is set out below.

## **Legal Standards**

Liability against a municipality under a theory of *respondeat superior* is not available for claims brought under § 1983. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691-92, 694, 98 S. Ct. 2018, 2036 (1978). It is well settled that a municipality or governmental entity can be held liable under § 1983 "only for its own unconstitutional or illegal policies and not for the tortious acts of its employees." Barney v. Pulsipher, 143 F.3d 1299, 1307

(10th Cir. 1998) (*citing* Monell, 436 U.S. at 694)); City of Oklahoma City v. Tuttle, 471 U.S. 808, 817, 818, 105 S.Ct. 2427, 2433 (1985) (plurality opinion). Thus, § 1983 litigation differs from simple tort liability in a negligence case where an employer is liable for acts committed by an employee in the scope of the employer's business. Such is not true for § 1983 claims where a municipality can only be held liable where its official policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, caused the individual a constitutional harm. Monell, 436 U.S. at 690-91, 98 S.Ct. at 2035-36. In other words, the plaintiff must show: (1) the existence of a municipal custom or policy and (2) a direct causal ink between the custom or policy and the violation alleged. City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 1202 (1989). Identifying a "policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Monell, 436 U.S. at 694, 98 S.Ct. at 2027. Similarly, liability may be found when there is a deprivation resulting from a "custom," based on the theory that there are "persistent and widespread . . . practices . . . [which are] so permanent and well settled as to [have] the force of law." Id. at 690-91, 98 S.Ct. at 2035-2036.

In 1997, the Supreme Court revisited the issue of municipal liability and held that a municipality is liable only when the official policy is the "moving force" behind the injury alleged. Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Id. "'[L]iability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant,' and not on negligence." Jojola v. Chavez, 55

3

F.3d 488, 490 (10th Cir. 1995) (*citing* Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992), *cert. denied*, 509 U.S. 923, 113 S.Ct. 3038 (1993)).

In cases where an official municipal policy itself violates federal law, issues of culpability and causation are straightforward. The existence of the unlawful policy itself may end further inquiry. Brown, 520 U.S. at 404-05, 117 S.Ct. at 1388-89. In contrast, when the policy at issue is lawful on its face and the municipality has not directly inflicted the injury through its own unconstitutional actions, the inquiry is more complex. In the latter situation, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Id.; Tuttle, 471 U.S. at 823-24, 105 S.Ct. at 2436.

When a plaintiff contends that the alleged custom or policy amounted to a failure to act, e.g., failure to discipline or failure to train,[1] he or she also must demonstrate that the municipality's inaction resulted from "deliberate indifference" to the plaintiff's rights. Harris, 489 U.S. at 389, 109 S.Ct. at 1205. Mere negligence is insufficient to trigger liability under § 1983. Daniels v. Williams, 474 U.S. 327, 328-30, 106 S.Ct. 622, 663-64 (1986) (the Due Process Clause is simply not implicated by a negligent act of an official); *accord* Davidson v. Cannon, 474 U.S. 344, 347-48, 106 S.Ct. 668, 670 (1986) (an allegation of a single act which may be nothing more than negligence is insufficient to state a claim under § 1983). To establish the requisite "deliberate indifference" needed for a municipal liability claim, the plaintiff must show that "the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and

---

[1] The Court already has granted Defendants' motion for partial summary judgment on the failure to train claim. Lehocky's training and some of the same City policies at issue here are set out at length in that opinion. [Doc. 82.] A discussion of the law pertaining to municipal and supervisory liability overlaps somewhat with the failure to train claim, particularly with respect to issues of prior instances of alleged constitutional violations and constructive notice to the City.

4

it consciously or deliberately chooses to disregard the risk of harm." Pulsipher, 143 F.3d at 1307. This type of notice may be shown "by proving the existence of a pattern of tortious conduct." Id. If, however, there is no pattern of tortious conduct shown, and instead, the plaintiff relies on one specific incident, then he or she must demonstrate that a violation of federal rights is a "highly predictable' or 'plainly obvious' consequence of the municipality's action or inaction. Id. at 1307-08.

With respect to alleged supervisory liability in relation to an excessive force claim, the plaintiff carries an additional burden. Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir. 1993). "A supervisor is not liable under § 1983 unless an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Id. (*citing* Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988)). Further, the mere allegation that a supervisor failed to take disciplinary action against an officer after the alleged incident is insufficient to impose liability under Monell. Id. "[W]e cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under Monell." Id. at 1055-56 (internal citation omitted). *See also* Worrell v. Henry, 219 F.3d 1197, 1214 (10th Cir. 2000) (supervisor not liable under § 1983 for the acts of his or her subordinates unless an affirmative link is demonstrated between the constitutional deprivation and the supervisor's personal participation, exercise of control or direction, failure to supervise, or actual knowledge and acquiescence in the deprivation), *cert. denied*, 533 U.S. 916, 121 S.Ct. 2521 (2001).

**Discussion**

I.   **MUNICIPAL LIABILITY CLAIM**

As stated above, in order to satisfy the elements of this claim, Castillo must demonstrate the existence of a policy or custom and a "direct causal link" between that policy or custom and the alleged violation. Castillo fails to raise a genuine issue of material act with respect to either element.

The City described at length in its brief its detailed and exacting policies, along with rules and procedures, in place at all pertinent times regarding the deployment of police service dogs ("PSDs") in the apprehension of suspects. [Doc. 59, Undisputed Material Facts ("UMF") 3-5.] The City further set forth the detailed policies in place with respect to an officer's response to the mentally ill suspect, along with the manner in which APD investigates and reviews an officer's use of force against a citizen. [Id., UMF 8-14.] In addition, the City described its canine unit policies as having incorporated the Fourth Amendment's use of force standards set forth in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989). [Id., UMF 4.] The policies and procedures are voluminous and no benefit is accrued by setting them out here. It is significant, however, that Castillo does not attempt to challenge any of them as inappropriate.

Castillo's Complaint identified one possible "procedural order" that may be relevant, alleging that the APD canines can be used to apprehend persons fleeing or resisting arrest, when there is reason to believe the subject committed a felony and that the decision to use a PSD for apprehension is based on the threat posed by the subject. [Complaint, at ¶ 23, Doc. 1.] However, Castillo's reference to the procedural order is incomplete as there is also a pertinent City policy in place. For example, this policy permits officers to use dogs to apprehend fleeing criminals if there is probable

cause to believe the individual will cause harm to someone, as well as in misdemeanor situations. [Doc. 59, UMF 3.]

Notwithstanding Castillo's reference to the procedural order in the Complaint, his responsive brief to the motion appears to rely solely on the theory that an alleged municipal custom and/or pattern of tortious conduct provided "notice" to the City of constitutional violations. [Doc 61.] First, Castillo's opposition brief is deficient in two ways. He failed to number and identify with particularity the material facts presented by the City that he contests and failed to refer to the record in support of a finding that there are disputed facts. District of New Mexico Local Rule 56.1 provides that all material facts set forth by the movant will be deemed admitted unless specifically controverted in the manner described. D.N.M. LR-Civ. 56.1. Thus, the motion for summary judgment as to the municipality liability claim could be granted on this basis alone since Castillo failed to dispute any the material facts set forth by the City. In addition, Castillo's opposition brief attempted to incorporate by reference his discussion in a previously filed brief in response to a motion for separate trial. [Doc. 61, pp. 2-3.] This also is improper. "A party may adopt by reference another party's motion or other paper only with permission of the Court." D.N.M. LR-Civ. 7.1. Despite these technical failures, the Court elects to decide the motion on the merits.

Castillo made two arguments in opposition to the motion. He argued that the motion should be denied because he had not yet been provided with access to Lehocky's complete personnel and internal affairs files which prevents him from presenting possible additional evidence of notice to the City in support of his claim. However, since the briefing of this matter, the Court has made an *in camera* inspection of the Lehocky files in a different excessive force lawsuit and has ordered production of certain items. The Court notes that these files did not contain any documentation of

prior instances or complaints of Lehocky's use of excessive force related to the deployment of a PSD that might have provided notice to the City, in terms of the incident alleged in this litigation.

Castillo's substantive argument in opposition to the motion is that because of the "number and frequency of allegations involving the excessive use of police force through a police service dog" the City had notice of "Lehocky's tendency towards uncontrolled and injurious use of his police attack dog." Essentially then, Castillo contends that there was a custom, practice or pattern of using PSDs in such a way as to cause constitutional violations of which the City had notice. [Doc. 61, p. 3.] In connection with this argument, he asserts that the failure to discipline Lehocky can subject the City to liability.

Castillo specifically posits that the City "should have had many indications" of Lehocky's prior use of excessive force with PSD's and that "the sheer volume of similar allegations made by different Plaintiffs with different attorneys against the same defendant" establish a pattern of tortious conduct.. He claims that the City's statement that there is no evidence of deliberate indifference by the City is "demonstrably false." He further asserts that Lehocky engaged in the "repeated use of excessive police force," that allegations of excessive force made by other plaintiffs are "strikingly similar" to the allegations here, that they are "chillingly real" and "palpable." These all constitute "argument and contentions," and are insufficient to raise an issue of fact. In response to a motion for summary judgment, the opposing party must submit admissible evidence by way of affidavit, interrogatory answers, deposition testimony, admissions and/or other admissible documentation or evidence showing a material issue of fact to be resolved by the fact finder. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2510 (1986). It is insufficient to rely on the pleadings or argument and contentions of counsel. Fritzscke v. Albuquerque Municipal School District, 194

8

F. Supp.2d 1194, 1206 (D.N.M. 2002) (*citing* Powell v. COBE Laboratories, Inc., 208 F.3d 227 (Table, text in Westlaw), 2000 WL 235241 (10th Cir. 2000)).

Noticeably missing from Castillo's response brief is a single reference to the record in support of these conclusory statements or the reliance on any other record evidence. Instead, Castillo's entire argument rests on a list of eight lawsuits (now nine) filed against the City, most, but not all, of which involved allegations against Lehocky. These cases were set out in the Court's previous decision related to the failure to train summary judgment motion. [Doc. 82.] The Court will not repeat its entire reasoning again here, but provides this summary of those cases and why they do not provide sufficient notice to the City to support the municipal liability claim.

Patterson-Montgomery v. City of Albuquerque, CIV 01-444, concerns an incident involving Lehocky and the same PSD, but post-dates the incident at issue in this case by several weeks. Booker v. City of Albuquerque, CIV 02-208, also occurred after the Castillo incident and did not even involve Lehocky. Neither of these cases could have given the City notice of Lehocky's prior alleged use of excessive force.

Three of the cases, Tortolita, Waddles and Ortiz, CIV 92-107, 92-492, and 96-414, all were dismissed without any judge or jury finding wrongdoing or liability on the part of Lehocky or the City. They too could not have provided the City with notice of actual wrongdoing or constitutional violations, without those actual findings.

Of the nine cases then, only three or possibly four could have served as potential notice to the City of use of excessive force by Lehocky: Smith, Chavez, Marquez, CIV 01-416, 00-307, 01-445, and Ramkowsky, D-202-CV-9002864, filed in State Court in 1990. The three federal cases are still pending before the United States District Court and there has not been a finding of liability or

9

wrongdoing in any of those cases. The only notice the City could have in relation to these three cases is that there are *allegations* of unconstitutional conduct. The Court does not have any information as to whether there was a finding of liability in the state court case – Ramkowsky, but assumes if there had been, Castillo would have made that argument. Thus, none of these cases provide notice to the City that Lehocky has been found to have used excessive force through the use of his PSD and violated a suspect's constitutional rights.

Allegations in pending, settled and/or dismissed lawsuits do not provide the City with notice, constructive or otherwise, that Lehocky acted unlawfully. This is true because allegations of unlawful conduct may amount to nothing more than that. "Imputation of constructive knowledge requires a showing that the underlying unconstitutional misconduct was 'so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of [it]." Thelma D v. Board of Education, 934 F.2d 929, 933 (8th Cir. 1991) (internal citation omitted). Similarly, in Jojola, the Tenth Circuit explained that allegations of four prior incidents over a period of nineteen years, along with "other rumors", do not demonstrate the requisite pattern of conduct to support imposing liability. Jojola, 55 F.3d at 491. Other cases involving isolated or a few complaints scattered over a number of years similarly have not amounted to a "pattern" of unlawful behavior. Thelma D., 934 F.2d at 933; Jane Doe "A" ex rel. Jane Doe "B" v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir. 1990). *See also* Ott v. City of Mobile, 169 F. Supp. 2d 1301, 1310-11 (S.D. Ala. 2001) ("Indeed, the number of complaints bears no relation to their validity.... [The plaintiff] was obligated to produce some evidence that the complaints against [the defendant] had some merit . . . .")

Moreover, allegations in other pending lawsuits simply do not amount to the type of "persistent and widespread . . . practices . . . [which are] so permanent and well settled as to [have]

the force of law," that are required to demonstrate a "custom" for purposes of imposing municipal liability. In addition, Castillo has not demonstrated the existence of an unlawful custom or practice that itself violates federal law, thereby possibly negating the need to show culpability and causation. Accordingly, the Court must apply "rigorous standards of culpability and causation" so that "the municipality is not held liable solely for the actions of its employee." Here, Castillo has not demonstrated a genuine issue of material fact with respect to the existence of a widespread custom or practice, and/or as to issues of culpability and causation.

With respect to Castillo's allegation that Lehocky was never disciplined for his conduct, again, this allegation alone is insufficient to defeat summary judgment. There simply were no citizen complaints or allegations concerning Officer Lehocky's use of PSDs prior to the instant allegations. Thus, there was no unconstitutional conduct alleged that might have required discipline. Without evidence that Lehocky engaged in a pattern of unconstitutional conduct without discipline and/or that the City had a "custom" or "program" that caused the unconstitutional conduct at issue, Castillo fails to raise a genuine issue of material fact. Castillo misses the point by relying on a number of cases where courts have held that failure to discipline officers "for police misconduct" can lead to liability. Here, Castillo did not supply any record evidence that Lehocky actually engaged in police misconduct of which the City knew and that he then was not disciplined for that misconduct. Instead, Castillo implies that Lehocky should have been disciplined for allegations of misconduct.

When Castillo alleges a failure to act, e.g., failure to discipline, he must supply evidence of the City's "deliberate indifference," before liability can be imposed. If Castillo is unable to raise a genuine issue for trial with respect to the existence of a pattern of tortious conduct and instead relies on one specific incident or isolated incidents, then he must demonstrate that a violation of federal

11

rights is a "highly predictable' or 'plainly obvious' consequence of the municipality's action inaction. Castillo simply has not provided this type of showing sufficient to defeat summary judgment. Moreover, several courts held that an unconstitutional custom will not be inferred from "a municipality's isolated decision not to discipline a single officer for a single incident of illegality." Frairie v. City of Arlington, 957 F.2d 1268,1278-79 (5th Cir.) (citing a number of other decisions for the same position), *cert. denied*, 506 U.S. 973, 113 S.Ct. 462 (1992).

Accordingly, Defendants' motion for partial summary judgment as to the municipal liability claim will be granted.

## II. SUPERVISORY LIABILITY CLAIM

In the City's motion for partial summary judgment as to the supervisory liability claim, it again set forth the pertinent policies in effect regarding a required reporting and investigation process associated with certain uses of force, including related responsibilities of supervisors. In addition, the City identified and described its policies regarding the investigation of injuries caused by a PSD. [Doc. 69, UMF 3-8.] The City also detailed APD's supervision of Lehocky's decisions to use his PSDs to apprehend suspects and noted that in accordance with its policies, Lehocky recommended the removal or retirement of certain PSD's over the years. [Id., UMF 9-11.] Finally, the City provided admissible evidence showing that prior to the incident at issue here, neither the Internal Affairs Unit ("IAU") nor Lehocky's supervisor knew or found that Lehocky had violated the APD's K-9 Unit's Standard Operating Procedures. [Id., UMF 13-16.]

What the City fails to claim is that Lehocky's supervisors or the IAU did not know of prior allegations of excessive force used by Lehocky. It would seem that some of the lawsuits discussed above involving Lehocky's alleged unconstitutional deployment of PSD's prior to the Castillo

12

incident would have been known by IAU or Lehocky's supervisors. Notwithstanding the City's possible knowledge of these prior lawsuits, unproven allegations against Lehocky (even then, very few allegations spanning his 13 years as a PSD handler) are insufficient to amount to the type of "notice" that would impose supervisory liability. (*See* discussion *supra*.)

Castillo's opposition brief is similar to the one he submitted in response to the motion regarding municipal liability. He again failed to follow the requirements of D.N.M. LR-Civ 56.1, and relied almost entirely on a list of the nine lawsuits that he claims should have provided notice to the City of Lehocky's "repeated inappropriate use of his PSD as a weapon . . . ." [Doc. 71.] Castillo simply ignored the fact that some of the listed lawsuits could not have provided notice to the City prior to the Castillo incident and neglected to explain why accusations of improper conduct should be equated with actual fault or liability.

In his response to this motion, Castillo made one reference to the record proper. He argued that over the course of years that Officer Lehocky has served as a dog handler, over fifty people have needed medical attention after being bitten by his PSD, and that the City, through its standard operating procedures, had notice of the multiple dog bites. Castillo concludes that by virtue of the prior dog bites for which numerous citizens received medical treatment, the City was certainly on notice and, therefore, the requisite "deliberate indifference" to Castillo's constitutional rights was established. Again, the fact that citizens were bitten by PSDs handled by Lehocky over a 13 year period, does not support a finding that those bites were the result of Lehocky's use of excessive force, nor has any such finding apparently been made prior to the Castillo incident. This is especially so when the record is devoid of any prior citizen complaints alleging that the use of PSDs was improper or amounted to constitutionally impermissible use of force.

13

For these reasons and those stated *supra*, the Court will also grant Defendants' motion for partial summary judgment as to a supervisory liability claim, to the extent that Castillo intended to or did allege such a claim separately from the municipal liability claim. In addition, Castillo has not raised a genuine issue of material fact to show an "affirmative link" between the alleged constitutional deprivation and a supervisor's or the City's "personal participation, exercise of control or direction, or a failure to supervise." More specifically, Castillo did not demonstrate a genuine issue for trial to show that the City's alleged failure to discipline or train Lehocky constituted a "deliberate" or "conscious" choice by the municipality. Harris, 489 U.S. at 388-89, 109 S.Ct. at 1204-05.

**Conclusion**

For all of the foregoing reasons, the Court concludes that the Defendants' Motions for Partial Summary Judgment [docs. 58 and 68] should be granted and that Castillo's claims of municipal liability and supervisory liability should be dismissed.

IT IS THEREFORE ORDERED that:

(1) Defendants' Motion for Partial Summary Judgment No. I: Dismissal of Municipal Liability (Policies, Customs, Patterns, and Practices) Claims [doc. 58] is GRANTED and that Castillo's municipal liability claim is dismissed with prejudice; and

(2) Defendants' Motion for Partial Summary Judgment No. III: Dismissal of Supervisory Liability Claims [doc. 68] is GRANTED and that Castillo's supervisory liability claim is dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

ATTORNEY FOR PLAINTIFF:
Samuel H. Bregman, II, Esq.

ATTORNEYS FOR DEFENDANTS:
Kathryn Levy, Esq.
Stephen G. French, Esq.
Luis E. Robles, Esq.
Robert W. Becker, Esq.
Christina Robles Anaya, Esq.